May it please the Court, Michael Simon for Appellant Qwest Dex, Inc. When a key fact witness on controverted issues testifies on direct examination at a civil trial that he has been a practicing lawyer since 1967, although he's not currently practicing law, may the other side in cross-examination attempt to impeach the credibility of that key fact witness by pointing out that the State Supreme Court has recently, in two separate occasions, suspended that former practicing attorney from the practice of law based upon a pattern of misrepresentations, multiple misrepresentations, and a pattern of dishonesty. Isn't that within the discretion of the trial judge under 608B? Yes, it is, Your Honor, and that is exactly the error that the trial judge made here by not Why is it an abuse of discretion to say, if you want to cross-examine him on those facts, you can ask him about what he did, but you can't ask him about the consequences of what he did because that would involve us in a trial within a trial. You have to take his answer. Yes, you do have to take his answer. And the problem here, Your Honor, is the answer to the original question is, may that be fair cross-examination to ask, were you suspended based upon a pattern of dishonesty and multiple misrepresentations? Isn't that up for the judge, the trial judge? Yes, it is, Your Honor. And here the trial judge erred by not realizing that he had the authority to say yes. The Ninth Circuit What makes you think that he didn't think he had the authority to say yes? At the excerpt of record, both at page 136 and at 76, the trial judge, the magistrate judge in his ruling said, quote, I do not think that the law allows us to get into the nature of the sanction or the nature of the proceedings. He said that at page ER 136. He also said at ER 76, at lines 20 to 24, I don't think the law allows that. I don't think the sanction of supervision is appropriate under the law. It's appropriate subject matter to go into under the law. And therein lies the problem. The trial judge did not perform a 403 balancing test. He erroneously concluded, he misunderstood the law. He had an inappropriate view of the law that felt that his hands were tied and that all he could allow is questioning about the underlying acts. He did not realize and did not accept that the Ninth Circuit, the Fourth Circuit, and the Seventh Circuit have all previously said, it is totally appropriate to ask this witness who introduces himself as a lawyer whether or not he has been disbarred or suspended based upon misrepresentations. And the ---- Why wasn't enough that he could be cross-examined with regard to the finding of the statements, false statements, I've forgotten the phraseology used by the Court and limit the sanction part? Sure. Two reasons. First of all, there's no precedent for why the sanction shouldn't come in. But what the Court allowed us to do ---- That it may be more prejudicial than probative. But that would be up to the trial judge to decide if the trial judge believed he had that discretion. That was not the finding the trial judge made. And frankly, as we see from statements from the Fourth Circuit, the Second, even the Ninth, it has been very common. It is very unambiguous to allow that type of credibility. And the reason why is because when a witness says that he's been a lawyer for more than 35 years, that witness is imbued with a certain credibility before the jury that is appropriate to respond to by pointing out that he has been sanctioned and suspended because of misrepresentations and a pattern. Counsel, my notes indicate, and I may be wrong, correct me if I'm wrong, that the Court allowed cross-examination as to Mr. Klug, as to whether he had been found to have been dishonest in, quote, proceedings, unquote, without designating what proceedings those were. But your ---- Did you try the case? I did. But you didn't ask about the proceedings. You only asked Klug if he had done the acts, that is, misrepresented himself as a notary public or made a motion to disqualify a judge that had ruled against him without notice to the other parties of the judge. So you see, you were allowed to go into whether the proceedings had found him to be dishonest. That's not quite correct, Your Honor. That's not quite correct. Well, you correct me and give me the citation as to the Court's ruling and your questioning. And that will be found The offer of proof where the Court discussed what questions would be allowed was to be found at basically pages ER 125 through 130, and that was the testimony from the witness. And what the Court then allowed is at ER 110. The Court allowed me to ask, did you make a representation of thus and such, such as did you make a representation at a deposition that you were authorized to administer oaths and that you were a notary? The witness said no. The Court allowed me to refresh his recollection with a question with, well, wasn't there a finding in an earlier proceeding that you had indeed made that representation? That's at ER 10 ---- excuse me, ER 110 to ER 111. And similarly ---- And did you ask that question? I did not. I did not. Well, if you didn't ask that question, then you didn't fully exhaust the latitude the Court allowed you. That's correct. All right. That's correct. I think it is a legally ---- it is a legally insignificant point, but you are correct. And the reason why is that the trial counsel and my opposing trial counsel were having divergent views where I took the position at trial that I was allowed to ask about the action by the ---- If you've been allowed to ask that, then there wouldn't be that ---- there wouldn't be any substantial difference between saying had you been found guilty of dishonesty in an earlier proceeding and had you been found guilty of dishonesty in a bar proceeding. With all due respect, Your Honor, I disagree, and here's why. If I would have asked, may I refresh your recollection, Mr. Witness, wasn't there a finding in an earlier proceeding where you had been found, the witness would have answered or most likely would have answered at best, yes, but I disagreed with that conclusion. That would basically be relatively unhelpful to me in comparison to what the law allowed me to ask, namely, weren't you suspended from the practice of law based on that finding? And I made the decision ---- The judge can stop you from doing that under a 403 analysis, but was incorrect in concluding that he didn't have that discretion. Exactly. And although that is precisely correct. And based upon my reading of the cases, including Fourth, Ninth, and Second Circuit precedent, I don't believe the judge would have excluded that under 403 because other courts have specifically said that it is a perfectly appropriate line of cross-examination of an attorney witness to ask, weren't you disbarred or suspended from the practice of law based upon a pattern of practice of dishonesty or multiple representations? That has been perfectly well approved. So I don't believe that, and there's nothing in the record to show, that the judge would have come out in that conclusion with a 403 analysis had the judge not made the mistake in thinking that he didn't even have the discretion to allow that line of question. But, you see, what he allowed you to ask at ER 11011, which is, was there a finding in an earlier proceeding that you were dishonest, doesn't quite square with your citations that the judge thought that the law didn't allow him to get into the nature of the sanction at 136 and at 76. That's correct. You have to look elsewhere for that. My citations for that are at 136, ER 136, and at ER 76, lines 20 to 24. So what the judge was saying is you can ask him whether he'd been found to be dishonest in an earlier proceeding, but you can't name that proceeding or the nature of the proceeding because the law doesn't allow me to. Or the nature of the sanction. That's exactly right. The judge viewed his legal limit as saying you can't use the name of the proceeding, you can't use the name Oregon Supreme Court, and you can't say the nature of the sanction, namely suspension from the practice of law. You can ask him was there some other proceeding that had this finding. And that the judge erred in realizing that he really was allowed in his discretion to allow me to ask about the nature of the sanction or the nature of the other proceeding and to identify the Oregon Supreme Court. And I concluded that the modest amount that the judge allowed me to ask simply was insufficient to take the risk of creating a reversible error on that point because my opposing counsel was arguing that they couldn't even ask that type of question. And so the modest benefit of being able to ask what the judge was allowing me to do, I concluded was of so slight significance that when I couldn't get what I really wanted, and that is to be able to ask were you suspended based upon a pattern of were you suspended by the bar and were you suspended because of multiple misrepresentations and a pattern of dishonesty, the judge believed he did not have the legal authority to allow that and I decided not to ask further. But the judge did clearly say that both sides can have preserved this issue for appeal. Now the important point of this judge's misunderstanding of the law is now is this reversible error or not? And that's an important issue that I believe this Court will need to address. And there I'd like to remind the Court of the decision from the Ninth Circuit in 2005 in Obrey v. Johnson. Before Obrey v. Johnson, there was confusion in terms of whether or not there was an evidentiary error required either who had the burden of proving the effect on the outcome. And Obrey v. Johnson in Ninth Circuit 2005 quite clearly resolved that ambiguity or that controversy by saying when reviewing the effect of erroneous evidentiary rulings, we begin with a presumption of prejudice and that it then becomes the burden of the other side, the side that benefited from the erroneous legal ruling to show by a preponderance of the evidence that had the evidence been admitted, the result would have been the same. And here I submit it is quite clear that had the evidence been admitted, namely, had I been able to ask Mr. Kluge whether or not he had been suspended by the practice of law on two separate instances recently by the Oregon Supreme Court based upon multiple misrepresentations and a pattern of dishonesty, I submit it's quite clear he wouldn't have been believed by the jury. He would have answered yes. Believed about what? Sure. To what effect? I mean, I don't know that it's clear that his testimony had much to do with the bottom line. It did in two respects. This is a breach-of-contract case where my client expressly reserved the right to modify the contract. And one of our defenses was that we did modify the contract. But the jury clearly found against you on that. There was no dispute that there was a modification notice received by August. The best I can figure out, this witness's testimony has to do with whether something was given in July. But the bottom line is that the jury decided the modification wasn't effective. Sure. That's correct. And here's where the problem comes in, Your Honor. In the jury instruction at S.E.R. 100, one of the elements of modification is that it has to be done in good faith. My client's witness, Mr. Quinn, testified at pages E.R. 138 and 139 that he did have this conversation with Mr. Kluge back in July. And he clearly said the effect of the rate change is going to be this coming year, 2000. Mr. Kluge said, no, he never said that. It was 2001. In addition, Mr. Quinn said, and we gave them an opportunity to reduce any harmful effect or harsh effect of this by saying you can go past the close date. Mr. Quinn said that at E.R. 139. And Mr. Kluge again denied that and said, Mr. Quinn, Dex, never said that at all. Therefore, if Dex was not believed on this critical issue of discrepancy of fact, then the jury might very well have concluded that Dex did not act in good faith in modifying the contract. And as they were properly instructed without objection, good faith modification is required. The modification has to be in good faith. So the he said, she said dispute between Dex's Mr. Quinn and NMS's Mr. Kluge on key critical points of the harshness and the timing of the rates change would directly go to whether or not Dex acted in good faith. If they're lying about what they said and when they said it, a jury could properly conclude they were not acting in good faith. And that was our problem. And under the OBRI analysis, we submit that the plaintiff cannot meet that burden. The plaintiff, excuse me, NMS has other issues relating on a cross-appeal to prejudgment interest. May I reserve the balance of my time to either respond, to reply, or to deal with those issues? Yes. Thank you. Yes. Please, the court. I'm Leslie Robertson. I'm the hearing for plaintiff NMS in this case. With respect to the appeal, I want to start out by correcting what I think is an error that Mr. Simon made with regard to characterizing the only two points of difference between Mr. Kluge's testimony and that of Mr. Quinn. Mr. Quinn was a low-level employee who had simply been delegated, more or less at the last minute, to deliver a PowerPoint presentation of the change or the new plan that was being imposed by DECCS after most of the performance, or over half of the performance, had occurred in the year 1999. There is no issue at all about what was said in that presentation. That was on July 22, 1999, and there can't be, and there wasn't any dispute about it because it was all, the PowerPoint presentation was there before the jury, and it says this will be the new rate scale. Did it specify when the rate scale would go into effect? Yes, it did. However, Mr. Quinn testified. Mr. Quinn testified that there were many points in this plan, many aspects to it, many details, and he admitted that he was quite unfamiliar with the commission program, and he was aware that there was some thought about reconsidering elements of the plan. Mr. Quinn said that in his conversation with Mr. Kluge, he did say that there were elements that might be reconsidered, but Mr. Quinn testified that the elements that might be reconsidered didn't extend to the timing of the change in commissions. Mr. Kluge was under the impression that Mr. Quinn was saying that the possibility of reconsideration was a little bit more extensive, but Mr. Quinn called him back on August 12th, in other words, three weeks later and said, no, there isn't going to be a reconsideration. So the only dispute was not about the repudiation of the commission scale, and it was the repudiation of the commission scale, which was the breach of contract. There was no dispute about when that was communicated. It was communicated on July 22nd. The only variation in the memories of these two people was whether Mr. Quinn expressed that there might still be another reversal. In other words, Dext might reconsider its repudiation for three whole weeks. That was not a point that the jury had to decide, and, in fact, Mr. Simon, in his argument to the jury, told the jury, forget about that. Just take August, he used August 23rd. Just take August 23rd as the date that they knew that this was written in stone. So he told the jury, don't worry about that discrepancy. You don't even have to think about which was right. That's what he told them. Now he's telling you that that was, now the brief says that was an issue the jury had to decide. Well, why? Why would the jury have to decide whether it was August 12th or July 22nd that Hope died for NNS about whether Dext would reconsider its repudiation, which everybody agreed took place on July 22nd. It leads nowhere. And there really isn't an argument in the brief that it does lead anywhere. And the only other discrepancy, supposed discrepancy, really isn't a discrepancy. Mr. Quinn said, I knew that sometimes, if it was possible, in some books, Dext would allow late submission of advertising. And Mr. Kluge said, he didn't tell me that. That's not, that is not a dispute about the evidence. It doesn't match. And it doesn't matter, because the performance by all the witnesses said, books closed, ordinarily, what's done is done. You can't submit additional advertising. Now, Mr. Quinn says, well, sometimes, even so, they'll allow, maybe if it's possible in some books, they'll allow some additional advertising to be submitted. Mr. Kluge said, well, it didn't matter anyway, because by that time our staff was working on the books that hadn't closed. So you can't really run back to the person who just sold a package and ask them to throw that out and you're going to sell them more. But, you know, what it all amounted to was saying that the employer can have a contract to pay you $10 an hour after you perform. He says, well, you know, I've decided I'm going to pay you $7 an hour, but guess what? You can work overtime and you can get to that same final point. Well, that doesn't lead anywhere. It doesn't have any bearing on whether he breached the contract by changing the rates, and it doesn't have any bearing on damages, because everyone agreed that the damages were going to be the difference between 15% commission on what they actually sold and 21% commission on what they actually sold. And Dex's own records showed what they sold, showed that they paid, and Dex said that they paid 15. And so Dex's expert said, well, here's what the damages would be. It's going to be the difference between 15 and 21. There was no dispute about when they paid. There was no dispute about how much they paid. There was no dispute about what the damages would be if, in fact, the jury found, as it did, that there was a contract for the 21% commission rate. None of that was in dispute in the course of the trial. So why did Dex bring this appeal, arguing that these two little inconsistencies raised an issue of credibility? And I wrote down what Mr. Simon said. He said, a key fact witness on controverted facts, and the only controverted facts are whether it took three weeks or not for Hope to die for NMS. No argument anywhere in the briefs, no argument to the jury. In fact, telling the jury didn't matter by Mr. Simon. That's not a controverted fact that requires a credibility question. And the other controverted fact is this question of whether in some unspecified books, if it was physically possible, they might have run twice as fast to get back to where they should have been under the contract as promised. Those are really what I call yellow tie issues. That is to say, what Mr. Simon is actually arguing is, if Mr. Quinn said I was wearing a yellow tie, and Mr. Kluge said, no, I remember this being a blue tie, that would create a controverted fact, which would allow him to impeach the credibility of Mr. Kluge, and furthermore, it could change the course of the trial. The yellow tie issue could change the course of the trial because, according to the argument. You addressed opposing counsel. Yes. According to the argument here, if a low-level employee is disbelieved about the color of his tie, then a rational jury could infer that when the president of the company changed the rates, he did so for some clandestine purpose. I suspect they were interested for the same reason that you were so interested in making certain that the Oregon Supreme Court elements stayed out. That's right. The apparent impact for an irrelevant reason is hard to avoid, but it's there. That's right. Could you really say that if this information was kept or had not been kept from the jury, there might not have been some impact on the verdict? There would have been a possibility of an unfair prejudicial impact on the jury, and that is exactly what the rules of evidence exist to prevent. Your opposing counsel's point is that the judge never made that determination. The delicate balancing point of 403 saying, well, yes, it is relevant, but it's more prejudicial than it is relevant. He says that the judge was under the misapprehension that the finding by the state bar and later by the Oregon Supreme Court was not within his power to allow in. That is what he has argued. In the brief, however, and in the assignment of error before the court, Dex specified that the issue on appeal was abuse of discretion, and it argued abuse of discretion. That was the argument made in the briefs. I believe that it is too late for Dex to now decide that there is a question of law that the court needs to determine rather than the question that Dex raised, which was abuse of discretion. Abuse of discretion is the standard applicable to evidentiary rulings. It is an abuse of discretion for the trial court to make an error of law. I think we get to the same place either way. Let's address that. Was there an error of law made by the trial court? No, there wasn't. There was, to the extent that the court may have erred, the court was perhaps more generous in allowing Dex to inquire into the fact that there had been a previous adjudication that the witness was dishonest in statements that had previously been made or actions previously been made. The counsel was allowed to inquire into conduct and allowed, if that conduct, if the jury's, I'm sorry, if Mr. Kluge had said, I did not misrepresent that I was a notary, and in fact, he said that. He testified. No, I didn't say I was a notary when I wasn't. Then Mr. Simon was permitted to say there was a finding in an earlier proceeding that had occurred, and I'm reading from ER 1112. The court says, I would let it go so far to be that there was a finding in an earlier proceeding that that had occurred. Mr. Simon has very candidly told the court that he made a strategic decision not to go into the existence of that earlier finding. Having made that strategic decision and now finding that his client is unhappy with the result, he now wishes the court to imagine that he had asked what he decided not to ask and that it had still gone that way, and therefore, he could then argue that he didn't go into the details because the court had made an error in the law. That's simply saying, I decided not to go down this road. I want to argue about how far down the road I could have gone if I had decided to go down the road at all. Well, do you agree with your learned colleague that had the judge said, I don't have the legal authority to allow cross-examination on the State Bar finding and the Supreme Court finding? It would have been an error, right? No. I don't agree. If the court had said, you can identify my question. I'm sorry. Answer my question. Ms. Roberts. Yes. Zero in on my question. Not on what you want to talk about, but on the question. No, I misunderstood your question. Had the judge said, I cannot allow questioning on the hearsay determination of the State Bar and of the Oregon Supreme Court. I don't have that discretion, and therefore, I'm not going to allow you to ask that question. Would that judge have been in error? No. Okay. Tell me what your authority for that is. Because under 608B, I think he did have that discretion. 608B allows inquiry into the conduct of the witness. The circumstances. Isn't that the language that's used? Okay. You say it's the conduct, not the consequences. It's – I would point out, too, that the advisory committee interprets that rule. It should be noted that the extrinsic evidence prohibition of 608B bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, 608B prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment when that conduct is offered only to prove the character of the witness. That's the advisory notify on which you rely. You think that the judge would have been right if he said, I can't allow that as a matter of law. I believe that the judge would have been right if he had said, I cannot allow inquiry into the opinions of the lawyers on the advisory committee or the opinion expressed by the judges of the Supreme Court. The advisory committee also points out – let's see. Well, the advisory committee makes reference to the United States v. Davis, which is a Third Circuit case, also makes the point that reliance on the conclusions reached by another tribunal is a backhanded way of allowing the opinions of third parties, not in present, to comment on facts and issue. I would like to point out that those issues, however, have not been – cross-examination, we've discussed those cases in our brief, and I've pointed out that what has not been ever determined is that it is an error for the court to shape the testimony in the manner that the court did here. The court here actually went further than the advisory committee in allowing exploration of the fact that there were other findings by a previous judicatory body. Without naming the judicatory body. Without naming it as the Oregon Supreme Court. Your point is that actually the magistrate judge leaned over backwards and gave Dex more than it was entitled to under the advisory note of 608B. That's right. And it shows that the judge felt he had the ability, he had more flexibility than is being suggested by Dex now, that the judge himself was not holding himself as strictly bound by exactly what the advisory committee said, but went further to say that he could bring in the fact of the previous adjudication without giving it the emphasis of the luster of the Oregon Supreme Court and without then going on to talk about the penalties which were imposed on the witness as a result of those actions and as a result of other actions. And we argued the prejudicial effect of such evidence in that the penalty, the suspension was based on a number of violations, one of which in each case went to the effect of misrepresentation. Other violations did not. Conflict of interest in acting as an attorney when one needs to be, when one should recognize one will be a witness in the trial, failure to have professional liability insurance. So the suspension by the state bar had reflected acts which did not involve dishonesty. That's right. That's right. I do want to – I've got a yellow light. I want to get to my cross appeal. There was – the issue on the cross appeal is simply the addition of prejudgment interest under the Oregon statute. You didn't introduce any evidence as to when the money was paid? You introduced invoices. No, no. But you see, interest can only run from the moment in a prejudgment interest. It runs only from the time the money is paid. Where's the evidence of when it's paid? Your Honor, if we're talking about the money being paid and we're talking about when the commissions were paid, the commissions were paid by a credit. You're talking about when your client actually paid DEX. When we paid. I guess it was 85 percent instead of 79 percent of the billings. Our obligation to pay DEX was independent of their obligation to pay us. It's not a question. Assuming we go along with what the district court ruled, the question being posed now is was there evidence submitted that would permit the court to ascertain what the interest would amount to? Was there evidence about when your client paid DEX? Well, Your Honor, if the issue is when we paid – if our commissions were only due to us when we paid DEX, then the jury verdict – and there was no argument by DEX that the jury should be told that DEX didn't owe any commissions until we paid them because we never did. No, there was no evidence as to when the invoices were paid, but the evidence of this particular contractual relationship and the gist of what the jury found by finding that contract breached by underpayment of the commissions was that in this contractual relationship, they agreed to pay us, and their witness said – Ms. Crooks, Mr. Simon's associate, asked the witness, how did DEX pay NMS? And the witness who was in charge of the commission program said, we paid by entering a credit on the invoice when the invoice was issued. And that was the manner in which the payment took place. You don't want to answer the question I've asked you. I did answer the question. There was no evidence about when we paid our debt to DEX. There was only evidence about when DEX should have paid its debt to us, and that is the question upon which the Oregon statute turns when DEX owed a payment. And the evidence as a factual issue was that DEX paid at the time of the index the invoice by a reduction in our indebtedness. That is Oregon law at that point. Thank you. Mr. Simon. The source of the trial judge's error was the comment, the advisory committee comment, the 608B, the 2003 comment. I presented it. We had cross motions in limine. I presented the Ninth Circuit, Second Circuit, and Fourth Circuit opinions. Opposing counsel presented the 2003 advisory comment, and that is what prompted the judge to make an inappropriate or erroneous conclusion of law that he did not have the authority to allow the line of cross-examination of the attorney witness that I proposed. Advisory opinion is not good authority for his ruling? Pardon me? The advisory opinion is not good authority for his ruling? Well, with all due respect, Your Honor, I think Judge Posner got it right in his critique of that advisory committee opinion in United States v. Dawson. We discussed that case in our yellow brief, and it has two opinions. The 2006 opinion was the one that really explains the error in that advisory opinion committee comment, and, frankly, its limitations. Judge Posner writing for the Seventh Circuit in United States v. Dawson, we discussed it in our brief, 434F3rd956 at page 959, explains that this advisory committee note in 2003 really had nothing even to do with the amendment that took place in 2003. It was post-enactment commentary being added. And what he really wanted to observe there is that 608B simply deals with the concept of extrinsic evidence. That is all. And to the extent that the advisory committee comment somehow implies some proposition beyond just simply you can't use extrinsic evidence under 608B, Judge Posner writing for the Seventh Circuit panel, unanimous panel, says we respectfully disagree with that analysis. We've considered it, but we disagree with it. And all it does is just give caution to the judge that there may be other issues besides extrinsic evidence that the judge should consider. No, we have to, though, go further than I guess you'd like us to go. If the judge makes a statement relying on something that may later be proved wrong, at the point he makes the statement and he relies upon it, where do we go? It was an error of law. The judge misunderstood the law. Advisory committee comment is just a comment. It's not even a rule. It's just a comment. And to the extent that the judge took that comment for more than he should have, as Judge Posner explains the limitations of that comment, to the extent the trial judge here misunderstood and misapplied that comment, as Judge Posner would explain, then the church. The reason I'm smiling is because I know and you know why you wanted to get it in. I don't know, but I can suspect why you wanted to get it in. It would have a very positive prejudicial effect. The judge might decide more prejudice than probably. Maybe not. On this record. Couldn't he make that decision? I suppose it's always possible that the judge could make that decision if they do the 403 balancing. But I know it's still more than possible. Probable? No, I don't think so. And the reason why is because I look at the Second Circuit in Weikert when they say it is quite common when impeaching an attorney witness to bring out the fact that they have been disbarred or suspended. That is quite well accepted. And the reason for that is because when one comes to a jury as an attorney, it does imbue credibility on that witness. I have to say that's a premise I'm not so confident about given the public opinion survey show lawyers rank pretty low in the public's attitude. Well, then why one would ask on direct examination would that witness identify himself as a practicing lawyer for 67 years? That's since 1967. The other problem is whether the question that he was asking would have had some bearing on the outcome of the case. Yes, and here's the answer to that. And I disagree with my learned counsel. The key is Dex's good faith. We have to show good faith modification. And by pointing out this inconsistency between what Mr. Quinn said, he was the one interacting with the client, and with what Mr. Kluge said, it enabled them to argue that Dex was not acting in good faith. And therefore, we did not, in good faith, modify the contract as an element of the jury instruction SCR 100. I did the best. I was hoping you'd get a second to say something about the interest that is being argued for. Sure. I'll be glad to. It's basically that the trial judge got it right, that the basic thrust of this is that the way the party structured their transaction was that the commission was paid by having NMS take it as a deduction from the amount that it owed to Dex. And that one of the contractual requirements of NMS was it has to pay its bills. Now, once it pays its bills to Dex, it will then be out that money. And if it paid too much because the interest deduction was inappropriate, the commission deduction was inappropriate, then it would be out that money and it would be entitled to prejudgment interest. But there was no evidence that NMS either paid its bills in 2000, or let alone when it paid its bills. Therefore, there was no evidence of when NMS was out that money, and therefore it's not entitled to prejudgment interest because it didn't prove the second prong required for prejudgment interest, namely proving when the date was due for that money, when they would have been out that money. That's how we respond. Did NMS pay its bills to Dex? To answer that, I'll go outside the record. The answer is no. There's a trial coming up where Dex is suing NMS for $1.5 million. That's in state court. It is outside the record. But the answer is there's currently a lawsuit in state court where Dex is suing for $1.5 million for unpaid bills, and in all candor NMS has a counterclaim against Dex for putting it out of business and seeking unspecified damages for that as well. But that's in state court and it's outside the record. Just one ballot and an extended card of disputes. Yes, Your Honor. I confess I had a feeling that might have been the case, so that's why curiosity impelled me to ask the question. The case just argued is submitted.
judges: Farris, Clifton, Bea